UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

David J. SAFRAN,

                              Petitioner,

                                                    **MEMORANDUM & ORDER**
              v.                                     12-CV-4160 (PKC)

DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION,

                              Respondent.

------------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

        David J. Safran ("Petitioner"), appearing *pro se*, seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254, to vacate his 2011 judgment convicting him of multiple counts of criminal

possession of a forged instrument.  Because Petitioner's claims are procedurally defaulted and/or

without merit, his petition is DENIED in its entirety.

## BACKGROUND

I.      **The Charged Conduct and Indictment**

        On the evening of November 13, 2010, Petitioner was stopped by a New York City

police officer while driving in Queens County.  (Dkt. 20-1 at ECF 46[1].)  The police officer had

noticed that Petitioner's car had a forged temporary Arkansas license plate, which had "marker

and pen ink handwriting" instead of "typewritten font."  (*Id.*)  During the car stop, the police

officer found and recovered 22 forged copies of Petitioner's temporary Arkansas license plates

---

[1]  Citations to "ECF" pages refer to the page numbering of the Electronic Court Filing ("ECF")
system, and not the document's internal page numbers.

and 119 forged copies of Petitioner's Arkansas registration sticker from Petitioner's vehicle.  (*Id.* at ECF 46-47.)

On May 26, 2011, Petitioner was indicted on 141 counts of Criminal Possession of a Forged Instrument in the Second Degree (N.Y. Penal Law ("N.Y.P.L.") § 170.25) by a Queens County grand jury.  (Dkt. 20-2 at ECF 5.)

## II.  The Guilty Plea and Sentencing

On October 20, 2011, Petitioner entered a plea of guilty to Criminal Possession of a Forged Instrument in the Second Degree, a class D felony, in Queens County Supreme Court.  In return, Petitioner was promised an indeterminate sentence of two to four years in state prison, to run concurrent with the time Petitioner was serving in a separate Suffolk County case.  (Dkt. 20-1 at ECF 5.)

During the plea allocution, Petitioner acknowledged that "on or about November 13 of 2010 in the county of Queens [he was] in possession of . . . [a] forged Arkansas state temporary tag . . . with the intent to deceive another person to get a benefit." (*Id.*)  Petitioner also acknowledged that he understood that "by pleading [he was giving] up the right to go to trial," at which "[his] attorney would have [had] an opportunity to question or cross examine the witnesses against [him]." (*Id.*)  Petitioner further acknowledged that "[b]y admitting [his] guilt [he was giving gives] up [his] right to remain silent and . . . [his] right to have the DA's office prove these charges beyond a reasonable doubt." (*Id.*)  When asked by the court about the voluntariness of his guilty plea, Petitioner denied that "[a]nyone [was] forcing [him] to plead guilty" and affirmed that "[he was] pleading guilty because [he was] guilty." (*Id.* at ECF 6.)

After the court explained to Petitioner his right to appeal, Petitioner acknowledged that he understood that he had "a right to appeal the plea and sentence" but was waiving those rights by

signing the waiver. (*Id.* at ECF 7.) The waiver signed by Petitioner included a waiver of his right to file post-conviction motions and applications, which expressly extended to motions to vacate his conviction and sentence under New York Criminal Procedure Law Article 440.[2] (*Id.* at ECF 10.)

On November 17, 2011, Petitioner was sentenced to an indeterminate sentence of two to four years, concurrent with the sentence he was serving for his Suffolk County conviction. (*Id.* at ECF 16.)

## III.    Direct Appeal

Although it is unclear from the record when Petitioner actually filed the notice of appeal or what claims he raised on appeal,[3] Petitioner asserts that he made the following claims: (a) he was denied a speedy trial[4]; (b) he was improperly sentenced for a violation of N.Y.P.L. § 170.25[5] when he should have been sentenced for a violation of New York Vehicle and Traffic Law

---

[2]  The waiver also expressly covered habeas corpus petitions and any other motion or application challenging Petitioner's conviction in state or federal court. (Dkt. 20-1 at ECF 10.) *See People v. Safran*, No. 2012-02010, 2012 WL 4127431 (N.Y. App. Div. Sept. 20, 2012) (permitting Petitioner to file his direct appeal); *People v. Safran*, 978 N.Y.S.2d 911 (N.Y. App. Div. Jan. 29, 2014).

[3]  In its opposition to the petition, Respondent incorrectly states that Petitioner "failed to file a direct appeal of his conviction with the Appellate Division." (Dkt. 20-2 at ECF 15.) Consequently, Respondent did not provide any information about Petitioner's direct appeal. The information set forth herein regarding Petitioner's appeal is based either on the petition or publicly available information obtained by the Court.

[4]  Petitioner appears to be referring to his motion to dismiss all charges, dated June 7, 2011, in which he argued that he should be granted a speedy trial if the charges were not dismissed. (Dkt. 20-1 at ECF 32.)

[5]  N.Y.P.L. § 170.25 provides that "[a] person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10." N.Y. Penal Law § 170.25.

("N.Y.V.T.L.") § 403-a[6]; (c) he never pled guilty or had a jury trial; and (d) he was imprisoned or detained without a court order. (Dkt. 1 at ECF 2.)

On September 20, 2012, the Appellate Division, Second Department *sua sponte* deemed Petitioner's previously filed moving papers to constitute timely notice of his appeal, and granted him an extension of time to perfect the appeal. *People v. Safran*, No. 2012-02010, 2012 WL 4127431, (N.Y. App. Div. Sept. 20, 2012). The order also authorized Petitioner to proceed with his appeal *pro se*, but required him to waive his right to appellate counsel. *Id.*[7]

On January 29, 2014, the court unanimously affirmed Petitioner's conviction and sentence, finding that: (a) Petitioner's guilty plea was "knowing, voluntary, and intelligent;" (b) Petitioner was lawfully sentenced, pursuant to his plea agreement, for the crime to which he pleaded guilty, *i.e.,* criminal possession of a forged instrument in the second degree, a class D felony; and (c) Petitioner's remaining claims were without merit. *People v. Safran*, 978 N.Y.S.2d 911, 911-12 (N.Y. App. Div. Jan. 29, 2014).

On February 19, 2014, Petitioner applied for leave to appeal the Second Department's decision to the Court of Appeals. As of the date of this Memorandum and Order, the Court of Appeals has not yet decided Petitioner's motion for leave to appeal.

---

[6] In the petition, Petitioner references N.Y. Jur. 2d, Automobiles & Other Vehicles § 59 ("Temporary Indicia of Registration"), which cites N.Y.V.T.L. § 403-a. N.Y.V.T.L. § 403-a provides, in relevant part, that "[f]alsifying any temporary indicia of registration prescribed by any regulation of the commissioner issued pursuant to this section shall be a traffic infraction." N.Y. Veh. & Traf. Law § 403-a.

[7] It appears that Petitioner is referring to this waiver when he claims in his instant federal habeas petition that he "never signed any waivers, or waived any rights, for this case execpt [sic] for attorney on direct appeal." (Dkt. 1 at ECF 4.)

## IV.     Post-Conviction Collateral Attack

On January 6, 2012, Petitioner filed a *pro se* motion to set aside his "conviction, commitment, sentence, indictment" pursuant to New York State Criminal Procedure Law ("N.Y.C.P.L.") §§ 440.10, 440.20, and 440.30 ("440 Motion").  (Dkt. 20-1 at ECF 19-25, 89.) The asserted grounds were:  (a) his guilty plea was defective because he was "held under a state of duress in handcuffs and in the courtroom" (*Id.* at ECF 19); (b) the court lacked jurisdiction because the charged offense was possession of forged Arkansas license plates and registration stickers, not New York State license plates and registration stickers (*Id.* at ECF 19-20); (c) his conduct only violated N.Y.V.T.L. § 403-a, a traffic infraction, and was not a felony (*Id.* at ECF 20-21); (d) the trial court never ruled on his *pro se* motion to dismiss the indictment[8] (*Id.* at ECF 20-21); (e) because each item recovered from him had the words "Item not for use" inscribed on it, there was no intent to defraud (*Id.* at ECF 21, 23); (f) the car stop and search was unlawful (*Id.* at ECF 21-22, 24-25); (g) there was no probable cause for his arrest (*Id.* at ECF 21, 24-25); (h) no traffic tickets were issued to him, and therefore, he was not in violation of law (*Id.* at ECF 22, 24-25); (i) the indictment was defective because it failed to list any item possessed by Petitioner (*Id.* at ECF 24); (j) only the New York State Attorney General had authority to address his violation of N.Y.V.T.L § 402-a[9] (*Id.* at ECF 24); (k) a violation of N.Y.V.T.L § 402-a could only

---

[8]   Motion to Dismiss Any and All Charges (Dkt. 20-1 at ECF 32-42.)

[9]   N.Y.V.T.L. § 402-a prohibits the production and sale of "decorative or facsimile license plates," and provides, in relevant part, that "[w]henever there shall be a violation of this section, application may be made by the attorney general in the name of the people of the State of New York to a court or justice."  N.Y. Veh. & Traf. Law § 402-a.

result in civil penalties[10] (*Id.* at ECF 24); and, (l) he was a victim of malicious prosecution. (Dkt. 20-1 at ECF 23.)

On February 4, 2012[11], Petitioner filed a supplemental motion reiterating these claims. (*Id.* at ECF 89; *see also* Dkt. 20-2 at ECF 8.) On February 13, 2012, in response to the prosecution's opposition, Petitioner submitted an affidavit in which he, among other things, asserted that the waiver of his appeal right was "void" (Dkt. 20-1 at ECF 85), and denied executing "any 'waiver' for anything on or off the record for this case." (Dkt. 20-1 at ECF 85-86.)

On March 13, 2012, the Queens County Supreme Court ("440 Court") denied Petitioner's 440 Motion on both procedural and substantive grounds. (*Id.* at ECF 89, 95.) The 440 Court held that certain claims by Petitioner were procedurally barred by "[his] plea of guilty and/or by waiver of his right to appeal or to make post-judgment motions." (*Id.* at ECF 92.) The court "summarily denied" several of Petitioner's claims, including his claims "that his motion to dismiss was not ruled on by the Court" and "that his conduct rose only to the level of a traffic offense." (*Id.* at ECF 92-93.) The court also noted that Petitioner's claim "that he did not waive his right to appeal" is "definitively refute[d]" by "[t]he Waiver of Appeal attached to the People's Affirmation in Opposition, signed by [Petitioner] in the presence of his attorney and the Court." (*Id.* at ECF 92.) Lastly, the court held that the claims that were "arguably" not procedurally barred were meritless. (*Id.* at ECF 93.) Specifically, the court held that Petitioner's

---

[10]  N.Y.V.T.L. § 402-a provides, in relevant part, that "[w]henever the court shall determine that a violation of this section has occurred, the court may impose a civil penalty of not more than five hundred dollars for each violation." *Id.*

[11]  The People's opposition to Petitioner's 440 Motion states that Petitioner's supplemental motion was filed "[o]n or about January 30, 2012." (Dkt. 20-1 at ECF 65.) The date on which Petitioner filed his supplemental motion is immaterial to this petition.

claim of duress "provides no basis to vacate judgment," because he did not claim "that his guilty plea was not knowing, intelligent, or voluntarily, nor does a review of the minutes of the plea support such a claim." (*Id.* at ECF 94.) Moreover, the court reached the conclusion that "[Petitioner] was not coerced into entering a plea in this matter and was, in fact, aware of all the ramifications of his plea. The plea was entered into knowingly, intelligently, and voluntarily, with no indication that the defendant was subjected to duress." (*Id.*)

On March 14, 2012, Petitioner was served with a Notice of Entry regarding the denial of his 440 Motion. (*Id.* at ECF 128.) Petitioner did not apply for leave to appeal the denial. (Dkt. 20-2 at ECF 15.) Instead, on March 29, 2012, Petitioner moved *pro se* for reconsideration of the denial of his 440 Motion. (Dkt. 20-1 at ECF 97.)

On May 24, 2012, the Queens County Supreme Court denied Petitioner's motion to reconsider. (*Id.* at ECF 124.) The court held that: (a) the claims addressed in the initial motion were not the proper subject of a motion to reargue, and lacked merit (*Id.* at ECF 124); and (b) the new claims raised in the reconsideration motion should be denied pursuant to N.Y.C.P.L. § 440.10(3)(C), "which provides that a motion to vacate judgment may be denied when 'upon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so.'" (*Id.*) The court also found these new claims to be without merit. (*Id.* at ECF 125.)

On May 29, 2012, Petitioner was served with Notice of Entry regarding the denial of his motion to reconsider. (*Id.* at ECF 130.)

## V. The Instant Petition

On February 1, 2012, prior to filing his 440 Motion, Petitioner filed a habeas petition in the Eastern District of New York "challenging both his Suffolk County conviction (Case No.

00388-2011) and his Queens County conviction (Case No. 00926-2011)." (Dkt. 20-2 at ECF 12.) On July 20, 2012, then-presiding Judge Joseph F. Bianco directed Petitioner to file separate petitions for each of the two state court judgments. (*Id*.) (referencing Case No. 12-CV-599, Dkt. No. 18).

On August 13, 2012,[12] Petitioner filed the instant habeas petition challenging his Queens County conviction. (Dkt. 1; Dkt. 20-2 at ECF 13.) Petitioner asserts the following claims: (a) he was denied a speedy trial; (b) he was sentenced without a guilty plea or a jury verdict; (c) he was improperly sentenced for violating N.Y.P.L. § 170.25, a felony, when he only violated N.Y.V.T.L. § 403-a, a traffic infraction; and (d) he was denied his right to appeal in state court. (Dkt 1 at ECF 4.)

## DISCUSSION

## I. Standard of Review

As a threshold matter, the Court is mindful that the submissions of a *pro se* petitioner are "to be liberally construed," *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted), and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (internal quotation marks and emphasis omitted). But the Court "need not argue a *pro se* litigant's case

---

[12] The Petition is dated August 13, 2012, and was filed on August 15, 2012 in the Clerk's Office. (Dkt. 1 at ECF 1.) Pursuant to the "mailbox rule," which this circuit adheres to, Petitioner's *pro se* status allows federal courts to consider his habeas application filed on August 13, 2012, the date it was placed in the prison mail system, rather than on August 15, 2012, the date it was received by the court clerk's office. *Fernandez v. Artuz*, 402 F.3d 111, 113 (2d Cir. 2005); *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001).

nor create a case for the *pro se* which does not exist." *Molina v. State of N.Y.*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

A. <u>Antiterrorism and Effective Death Penalty Act ("AEDPA")</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner who believes he is being held in custody "in violation of the Constitution or laws or treaties of the United States" may seek relief in federal court. 28 U.S.C. § 2254(a). The statute provides, however, that habeas relief must not be granted for a claim adjudicated on the merits in the state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Harrington v. Richter*, -- U.S. --, --, 131 S. Ct. 770, 783-84 (2011) (citing 28 U.S.C. § 2254(d)(1)-(2)); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). As the Supreme Court explained in *Harrington*, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but it only "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 131 S. Ct. at 786.

A state court adjudicates on the merits of the federal habeas claim when it "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784. *See also*

*Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (even when a state court fails to provide reasoning for its decision, other than claiming a claim is "without merit," the decision disposing of the claim constitutes an adjudication "on the merits."). "[I]t may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85 (citing *Harris v. Reed,* 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

B. Timeliness

AEDPA provides for a one-year limitations period in which a state prisoner must apply for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The applicable one-year period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

For purposes of subsection (A), the applicable provision here, federal courts have held "the phrase 'final by the conclusion of direct review' to include an opportunity to seek certiorari." *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Smith v. Bowersox*, 159 F.3d 345, 347 (8th Cir. 1998)) (internal quotation marks omitted). Thus, the "AEDPA

limitations period specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct appellate review in the state court system *and* either the completion of certiorari proceedings in the United States Supreme Court, or . . . the time to seek direct review via certiorari has expired." *Williams*, 237 F.3d at 151 (emphasis added).

Here, due to a procedural anomaly, Petitioner's direct appeal is still pending before the Court of Appeals, despite the fact that Petitioner has already fully pursued his 440 Motion and filed this federal habeas petition. The pendency of Petitioner's appeal means that the one-year period of limitations under AEDPA has not even begun to run. 28 U.S.C. § 2244(d)(1)(A); *Williams*, 237 F.3d at 151. This petition, therefore, is timely.[13]

C. Exhaustion

Under 28 U.S.C. § 2254(b), a petitioner seeking federal habeas review must either have exhausted all of his state remedies for each federal claim, or show that there are no state corrective processes available. 28 U.S.C. § 2254(b); *see Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). The exhaustion doctrine is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

To satisfy the exhaustion requirement, a petitioner must have "fairly presented" "the substance of his federal claims 'to the highest court of the pertinent state." *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Bossett*, 41 F.3d at 828 (citing *Pesina v. Johnson*, 913 F.2d 53, 54 (2d

---

[13] While this situation theoretically could affect the exhaustion analysis, *see infra* at Section I.C., because the Court finds that the claims in the instant petition, in effect, have been exhausted through Petitioner's 440 Motion, the pendency of his direct appeal does not preclude the Court's consideration of the petition at this time. *See Warren v. Goord*, 06-CV-1423 (RRM), 2013 WL 1310465, at *11 (E.D.N.Y. Mar. 28, 2013) ("A petitioner may satisfy the exhaustion requirement either through a full round of the state's appellate review process or through a full round of postconviction proceedings").

Cir. 1990)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982)). "The claim presented to the state court, in other words, must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (quoting *Picard*, 404 U.S. at 278). However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Harris*, 489 U.S. at 263 n. 9, (1989)).

A petitioner is not required to present the substance of his federal claims to the highest state court through all available proceedings. *Goord*, 2013 WL 1310465, at *11 ("A petitioner may satisfy the exhaustion requirement either through a full round of the state's appellate review process or through a full round of postconviction proceedings."). Thus, "even if a claim is not raised at trial or on direct appeal, a claim pursued through a full round of state post-conviction proceedings is exhausted." *Harvey v. Portuondo*, 98-CV-7371 (JG), 2002 WL 2003210, at *5 (E.D.N.Y. Aug. 5, 2002); *see also Castille v. Peoples*, 489 U.S. 346, 350 (1989) ("[O]nce the state courts have ruled upon a claim, it is not necessary for a petitioner 'to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review.'") (citation and internal quotation marks omitted).

D. Procedural Default

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone*

*v. Bell,* 556 U.S. 449, 465 (2009) (internal quotation marks and citations omitted). Where the state court has actually and explicitly relied upon procedural default to dispose of a claim, there is an "adequate and independent state ground" for the judgment, and federal habeas review is prohibited. *Harris,* 489 U.S. at 260; *see also Galarza v. Keane,* 252 F.3d 630, 637 (2d Cir. 2001) (state court's reliance must be "unambiguous and clear from the face of the opinion"); *Coleman,* 501 U.S. at 750 (reasoning that states have an interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct its own errors").

Furthermore, "a claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted). Even if not properly exhausted, "[a] habeas petitioner who has defaulted his federal claims in the state court meets the technical requirements for exhaustion." *Coleman*, 501 U.S. at 732. When a petitioner's claim is procedurally barred, a federal court may review the claim only if the petitioner can either show "cause for the default and prejudice from a violation of federal law," *Martinez v. Ryan,* -- U.S. --, --, 132 S. Ct. 1309, 1316 (citing *Coleman*, 501 U.S. at 750), or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

To overcome the bar to federal habeas review of a claim that has been procedurally defaulted in state court, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (*i.e.*, the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing

*Coleman*, 501 U.S. at 748-50). The court may find cause where "some objective factor external to the defense" prevented the petitioner from presenting the claim. *Coleman*, 501 U.S. at 753. Once cause is established, the petitioner must also demonstrate "prejudice" by showing that "there is a reasonable probability that the result of the trial would have been different" had the alleged constitutional violation not occurred. *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (citation and internal quotation marks omitted).

If the petitioner is unable to show cause and prejudice, his procedural default may only be excused if he can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.,* "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo,* 513 U.S. 298, 321 (1995)). "A claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). In other words, a petitioner must demonstrate that "more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt – or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt," *Rivas*, 687 F.3d at 541 (quoting *House*, 547 U.S. at 538) (internal quotation marks omitted), and support it with "new reliable evidence . . . that was not presented at trial." *Id.* (quoting *Schlup*, 513 U.S. at 324) (internal quotation marks omitted).

## II.    Improper Exhaustion and Procedural Default With Respect to Petitioner's Claims

Petitioner asserts four claims in his habeas petition: (a) denial of his right to appeal in state court; (b) denial of his right to a speedy trial; (c) being sentenced without a guilty plea or a jury verdict; and (c) being unlawfully sentenced for violating N.Y.P.L. § 170.25, a felony, when

his conduct only constituted a violation of N.Y.V.T.L. § 403-a, a traffic infraction. (Dkt. 1 at ECF 4.)

Despite having previously raised these claims in his 440 Motion (*see* Dkt. 20-1 at ECF 19-25), Petitioner has failed to properly exhaust them by not seeking leave to appeal the denial of his 440 Motion. (Dkt. 20-2 at ECF 15.) This procedural lapse deprived the state of having the "first opportunity to address and correct violations of [a] state prisoner's federal rights." *Coleman*, 501 U.S. at 731.[14]

At the same time, these claims are procedurally defaulted because the time for seeking leave to appeal the denial of his 440 Motion ran long ago. N.Y.C.P.L. §§ 450.15; 460.10(4) (requiring petitioner to seek leave to appeal within 30 days of service of the court's order denying the 440 Motion); *Garner v. Superintendent,* 9:10-CV-1406 (GTS), 2012 WL 3929944, at *6 (N.D.N.Y. Sept. 10, 2012) (finding that, under N.Y.C.P.L. §§ 450.15; 460.10(4), a petitioner must seek to leave to appeal "within thirty days after service of the court's order denying his [440] motion."). Petitioner received notice of the denial of his reconsideration motion relating to his 440 Motion on May 29, 2012. (Dkt. 20-1 at ECF 130.) In order to have fully exhausted his 440 Motion claims, Petitioner should have sought leave to appeal by June 28,

---

[14]    Strictly speaking, Petitioner did not raise a denial of appeal claim in his 440 Motion. (Dkt. 20-1 at 19-25.) Rather, it was only in response to the prosecution's opposition to the motion that Petitioner asserted that he had never executed a waiver pertaining to his Queens County conviction and that any such waiver was, therefore, void. (Dkt. 20-1 at 85-86.) However, the Court deems Petitioner as having raised a denial of appeal claim in his 440 Motion on the basis that: (a) the 440 Court effectively construed Petitioner's 440 Motion to include this claim (Dkt. 20-1 at 92) ("the Court definitively refutes [Petitioner's] claim that he did not waive his right to appeal"); and (b) the Petitioner's claims about the invalidity of the appeal waiver, made as part of 440 Motion, are "substantially equivalent" to the denial of appeal claim he makes in this petition. *Jones*, 329 F.3d at 295 (for purposes of exhaustion, a claim presented to the state court must have been the 'substantial equivalent' of the claim raised in the federal habeas petition). Furthermore, given Petitioner's *pro se* status then and now, his submissions should "liberally construed." *Erikson*, 551 U.S. at 94.

2012. "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes*, 118 F.3d at 140 (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted). Thus, the Court may only review Petitioner's habeas claims if he can show "cause for the [procedural] default and prejudice from a violation of federal law," *Martinez,* 132 S. Ct. at 1316, or actual innocence. *Bousley*, 523 U.S. at 622.

Petitioner has failed to satisfy any of these requirements. Petitioner has not alleged any external factor that prevented him from appealing the denial of his 440 Motion, and thus has failed to demonstrate cause for the procedural default. Neither has Petitioner alleged, nor demonstrated, prejudice resulting from the alleged denial of his right to appeal. Lastly, with respect to actual innocence, Petitioner has not proffered any "new reliable evidence" that would lead a reasonable juror to have a reasonable doubt as to Petitioner's guilt. Therefore, Petitioner's habeas claims are procedurally barred from federal review.

## III.  Proffered Grounds for Habeas Relief

Notwithstanding this procedural bar, the Court considers the merits of Petitioner's four claims.

### A.  Denial of Right to Appeal

Petitioner asserts that his right to appeal was violated because he was "denied state court access of direct appeal," and he "never signed any waivers, or waived any rights, for this case" except for his right to appellate counsel.[15] (Dkt. 1 at ECF 4.) This claim is patently without

---

[15]  In addition to waiving his right to appeal at trial (Dkt. 20-2 at ECF 7), Petitioner waived his right to appellate counsel pursuant to the Appellate Division order that granted him an extension

merit since Petitioner's right to direct appeal was not, in fact, denied. At the time of the filing of Petitioner's federal habeas petition, the Appellate Division had not yet addressed Petitioner's direct appeal. However, since the filing of this petition, the Appellate Division has both permitted Petitioner to file his appeal, and has rendered a decision on it. *See Safran*, 978 N.Y.S.2d 911. Therefore, Petitioner's right to appeal claim is denied as moot.

B. Denial of Speedy Trial

Petitioner next contends that he was denied his right to a speedy trial. Petitioner largely bases this claim on a pre-trial motion he filed *pro se* during his criminal case in Queens County Supreme Court. (Dkt. 1 at ECF 4; Dkt. 20-1 at ECF 32-42.) In that motion, Petitioner argued that all charges against him be dismissed or that he be granted a speedy trial. (Dkt. 20-1 at ECF 32.) He now appears to be claiming that because the charges against him were not dismissed, he should have been granted, but was denied, a speedy trial. Petitioner effectively raised this issue in his 440 Motion by challenging the trial court's failure to rule on his dismissal motion. (Dkt. 20-1 at ECF 20, 32-42, 91 (Petitioner asserting that trial court never ruled on his pro se motion to dismiss).) The 440 Court denied this claim on the merits, finding that Petitioner had forfeited this and other claims by entering a guilty plea and waiving his right to appeal or make a post-judgment motion. (Dkt. 20-1 at ECF 91-92.) Petitioner has failed to establish that the 440 Court's decision was unreasonable, as required by 28 U.S.C. § 2254(d). *See Lopez v. Miller*, 915 F. Supp. 2d 373, 418 (E.D.N.Y. 2013) (holding that a federal habeas petitioner must establish both that a state court decision was unreasonable under 28 U.S.C. § 2254(d) and that his

_____

of time to take an appeal. *Safran*, 2012 WL 4127431 (ordering that "at the time the [Petitioner] serves and files his brief he shall file a waiver of his right to appellate counsel").

constitutional rights were violated under 28 U.S.C. § 2254(a) when the claim was adjudicated on the merits by a state court).

Petitioner's speedy trial claim is without merit.[16] The Supreme Court has held that it is "impossible to determine with precision when the right [to speedy trial] has been denied," *Barker v. Wingo*, 407 U.S. 514, 521 (1972), and there is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Id.* at 523. Accordingly, the Supreme Court set forth a balancing test that considers four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. Because it is a balancing test, none of the four factors are "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," and the four factors "must be considered together with such other circumstances as may be relevant." *Id.* at 533. Consideration of these factors does not show a violation of Petitioner's speedy trial right.

The first factor, "whether delay before trial was uncommonly long," provides some support for his claim. *Doggett v. United States*, 505 U.S. 647, 651 (1992). The delay between Petitioner's arrest and conviction was eleven months, from November of 2010 to October of 2011. In the Second Circuit, the length of the delay is a triggering factor, in that the other *Barker*

---

[16]  Although it is unclear from the record whether Petitioner has asserted a state statutory speedy trial claim or a federal constitutional speedy trial claim, a speedy trial claim is cognizable on federal habeas review to the extent that the claim is asserted under the federal Constitution. Petitioner has not provided any grounds for his denial of speedy trial claim in the instant habeas petition. However, in his trial court motion to dismiss, he made references to the Sixth Amendment and federal constitutional amendments in support of his speedy trial claim. To the extent Petitioner's claim is based on N.Y.C.P.L § 30.30, the state speedy trial statute, this Court does not have the power to review that claim. *Brodeur v. Warden, Eric M. Taylor Ctr.*, 12-CV-5545 (BMC), 2013 WL 1686527, at * 4 (E.D.N.Y. Apr. 18, 2013); *see also Bermudez v. Conway*, 09-CV-1515 (DLI), 2012 WL 3779211, at * 9 (E.D.N.Y. Aug. 30, 2012) ("To the extent that Petitioner raises speedy trial violations premised on N.Y. Criminal Procedure Law § 30.30, a state statutory protection, his claims are not cognizable on federal habeas review."). Given Petitioner's *pro se* status, the Court construes his speedy trial claim to be based on the Sixth Amendment.

factors will only be considered when the defendant demonstrates that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *United States v. Ghailani*, 733 F.3d 29, 43 (2d Cir. 2013) (quoting *Doggett*, 505 U.S. at 651-52, in turn quoting *Barker*, 407 U.S. at 530-31) (internal quotation marks omitted). In *Doggett*, the Supreme Court noted that the lower courts have found a post-accusation delay of one year to be "presumptively prejudicial," which "does not necessarily indicate a statistical probability of prejudice," but "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652 n. 1.

With respect to the length of delay that is presumptively prejudicial, this Court has held that a delay of 29 months is not presumptively prejudicial. *Hodges v. Bezio*, 09-CV-3402 (ENV), 2012 WL 607659, at *5 (E.D.N.Y. Feb. 24, 2012) (finding that a delay of 29 months "easily [fell] within the range of delays found to be acceptable for speedy trial purposes under the federal Constitution.") (internal citations omitted); *but cf. United States v. Vassell*, 970 F.2d 1162 (2d Cir. 1992) (noting that a commentator cited in *Doggett* "discerns a general consensus that a delay of over eight months meets this standard [of being presumptively prejudicial], while a delay of less than five months does not."). In any event, as in *Vassell*, this Court need not decide whether a delay of eleven months is "presumptively prejudicial," "because even assuming *arguendo* that it is, the remaining *Barker* factors do not favor [Petitioner]." *Vassell*, 970 F.2d at 1164 (emphasis in original); *see United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008) (no violation of the speedy trial rights under the *Barker* test where other three factors weighed in favor of the prosecution, despite a 31-month delay).

As to the second factor, "whether the government or the criminal defendant is more to blame for that delay," there is a paucity of evidence. Neither Petitioner nor the prosecution has

proffered any reason for the eleven-month delay and it is unclear from the record how much of the delay is attributable to Petitioner and how much is attributable to the prosecution. This factor, therefore, carries no weight in the analysis.

As to the third factor, the defendant's assertion of his right, Petitioner appears to have only raised the speedy trial issue once during the pendency of his case. Even on that sole occasion, he did so conditionally, in a motion to dismiss in which he requested "a speedy trial" *if* his dismissal was denied. (*See* Dkt. 20-1 at ECF 32.) On October 20, 2011, about four months after Petitioner made the motion, he pleaded guilty without raising the speedy trial issue again. (Dkt. 20-1 at ECF 2-8.) Then on November 17, 2011, at the sentencing, Petitioner's counsel asked whether the court ruled on the speedy trial motion, to which the trial judge opined that "[he had] ruled on all of the motions. If [he] didn't, [Petitioner] took a plea, and that would be waived." (Dkt. 20-1 at ECF 16.) Although Petitioner arguably asserted a speedy trial violation before his conviction, he waived any right to pursue that violation by pleading guilty, and was so admonished by the trial judge. *See United States v. Buczek*, 531 Fed. Appx. 105, 106 (2d Cir. 2013) (holding that the defendant's speedy trial claim was waived by his valid guilty plea); *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996) (internal citations omitted) ("Because a defendant's right to a speedy trial is nonjurisdictional, a knowing and voluntary guilty plea waives a speedy trial claim unless the defendant specifically reserves the right to appeal.").

To the extent Petitioner's speedy trial claim is based on his assertion of a violation in his 440 Motion, the fact that this is a post-conviction assertion weighs heavily against Petitioner. *See Garcia v. Annetts*, 9:08-CV-0736 (LEK/RFT), 2011 WL 4810012 (N.D.N.Y. Oct. 11, 2011) (citing *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990), in turn quoting *Barker*, 407 U.S. at 532 ("failure to assert the right will make it difficult for a defendant to prove that he was

denied a speedy trial")).  In *Garcia*, the petitioner "first mentioned the issue" before the trial, "but did not raise the issue again until after the conclusion of his trial, when he filed a *pro se* motion to vacate the conviction."  *Id.*  The *Garcia* court concluded, as this Court does here, "Petitioner's failure to assert his speedy trial rights until after his trial was conducted weigh[ed] against a finding that his constitutional rights were violated."  *Id.*

Finally, as to the fourth factor, Petitioner has specified no prejudice.  The prejudice contemplated by *Barker's* fourth factor concerns "impediments to the ability of the defense to make its own case (*e.g.,* if defense witnesses are made unavailable due to the government's delay)."  *Abad*, 514 F.3d at 275 (citing *Barker,* 407 U.S. at 534).  Here, Petitioner fails to claim or demonstrate that he was prejudiced in any way.  Given that "courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice," this factor weighs heavily against Petitioner.  *Rayborn v. Scully*, 858 F.2d 84, 94 (2d Cir. 1988) (citations omitted); *see also Taylor v. Sposato*, 11-CV-0229 (SJF), 2012 WL 113565, at *3 (E.D.N.Y. Jan. 11, 2012) (holding that a petition does not state a constitutional speedy trial claim where, *inter alia*, the petitioner does not allege any prejudice from delay).

Considering all four factors, this Court concludes that the 440 Court's denial of Petitioner's speedy trial claim was not an unreasonable application of federal constitutional law. *Harrington*, 131 S. Ct. at 785 (habeas relief only warranted if state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law").  Therefore, Petitioner's speedy trial claim is denied.

C.  Voluntariness of the Guilty Plea

Petitioner claims that he was sentenced without a guilty plea or a jury verdict.  The Court construes this claim to be challenging the voluntariness of his guilty plea and not its existence,

because it is clear from the record that he entered a guilty plea on October 20, 2011, (*see* Dkt. 20-1 at ECF 4-7,) and because Petitioner asserted, in his 440 Motion, that his guilty plea was defective because of duress. (*See* Dkt. 20-1 at ECF 19.) The 440 Court reasonably denied Petitioner's challenge to his guilty plea in the 440 Motion on the basis that the plea was "knowing, voluntary, and intelligent." (Dkt. 20-1 at ECF 94-95); *Harrington*, 131 S. Ct. at 785 (habeas relief only warranted if state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law").

The voluntariness of Petitioner's guilty plea is demonstrated by his plea allocution:

THE COURT: I have been told by your attorney you wish to plead guilty to criminal possession of a forged instrument in the second degree, a class D felony, in return for a promise of an indeterminate sentence, two to four years in prison to run concurrent with the time you are serving on the Suffolk case. Is that correct?

THE DEFENDANT: Yes.

THE COURT: Is it true that on or about November 13 of 2010 in the county of Queens you were in possession of a  -- what was it Arkansas?

MS. KANTH [Prosecutor]: A forged Arkansas state temporary tag.

THE COURT: With the intent to deceive another person to get a benefit. Is that correct?

THE DEFENDANT: Yes.

THE COURT: By pleading guilty you give up the right to go to trial. At that trial your attorney would have an opportunity to question or cross examine the witness against you.

You would have a right to present witnesses or testify on your own behalf if you wanted to, although you wouldn't have to.

By admitting your guilt you give up your right to remain silent and give up your right to have the DA's office prove these charges beyond a reasonable doubt, which is a high standard.

By pleading guilty you give up those rights. Do you understand that?

THE DEFENDANT: Yes.

THE COURT:  Anyone forcing you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Are you pleading guilty because you are guilty?

THE DEFENDANT:  Yes.

(Dkt. 20-1 at ECF 4-6.)

Thus, it is evident from the record that Petitioner knowingly, intelligently, and voluntarily entered into the guilty plea.  Petitioner consulted with his counsel both before and during the plea allocution, and the court advised and questioned Petitioner about the nature of the charge to which he was pleading guilty, the right to plead not guilty, the right to trial, the right to be represented by counsel, the right at trial to confront and cross-examine adverse witnesses, the factual basis for Petitioner's plea, and the maximum and maximum penalties Petitioner faced as a result of his guilty plea.  (*Id.*); Fed. R. Crim. P. 11(b).  The court also confirmed the defendant's waiver of both his trial and appeal rights.  (*Id*. at ECF 5-7.)  Finally, the court ensured that Petitioner's plea was voluntary and that no one was forcing him to plead guilty.  (*Id.* at ECF 6.)

Because of the "strong presumption of verity" of such guilty pleas, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citing *Machibroda v. United States,* 368 U.S. 487, 495-96 (1962)).  In the fact of the unequivocal record, Petitioner alleges only that he was "held under a state of duress" because he was handcuffed during the plea proceeding.  (Dkt. 20-1 at ECF 19.)  But as the 440 Court noted, "defendants are routinely handcuffed in court for safety and security purposes and the fact that the defendant may have been handcuffed in court has no bearing on

the issue of coercion." (Dkt. 20-1 at ECF 95.)[17] Moreover, there is no precedent in the Supreme

Court, or in the Second Circuit, that holds that being handcuffed during the plea proceeding, in

itself, invalidates an otherwise valid guilty plea.

Therefore, there is no basis to find that the 440 Court's decision was unreasonable.

Petitioner's claim challenging the validity of his guilty plea is, therefore, denied.

D. "Unlawful" Sentence

Lastly, Petitioner claims that he was unlawfully sentenced because he was sentenced

under N.Y.P.L. § 170.25, even though his conduct only violated of N.Y.V.T.L. § 403-a.

Petitioner presented this claim in his 440 Motion, and it was summarily denied by the 440 Court.

(Dkt. 20-1 at ECF 19-20, 91-93.) This denial was plainly reasonable. *See Lopez*, 915 F. Supp.

2d at 418 (petitioner must establish both that the State court's decision was unreasonable under

28 U.S.C. § 2254(d) and that his constitutional rights were violated under 28 U.S.C. § 2254(a)).

As demonstrated by Petitioner's plea proceeding, he, in fact, pled guilty to a violation of

N.Y.P.L. § 170.2. During the proceeding, the following colloquy occurred:

> THE COURT:  I have been told by your attorney you wish to plead guilty to criminal possession of a forged instrument in the second degree, a class D felony, in return for a promise of an indeterminate sentence, two to four years in prison to run concurrent with the time you are serving on the Suffolk case.  Is that correct?

> THE DEFENDANT:  Yes.

Thus, Petitioner explicitly confirmed that he was pleading guilty to "criminal possession

of a forged instrument in the second degree, a class D felony," which tracks the language of

---

[17]   Other courts have similarly ruled that being handcuffed does not, *per se*, constitute coercion or invalidate a guilty plea. *See, e.g. Decker v. Sigler*, 310 F. Supp. 588, 592 (D. Neb. 1969), *aff'd*, 428 F.2d 453 (8th Cir. 1970) ("being locked in a room with handcuffs on" was not "sufficient to constitute mental coercion and invalidate his guilty plea"); *State v. Lemburg*, 257 N.W.2d 39, 45 (Iowa 1977) (finding no impact from handcuffs on the voluntariness of guilty plea, even if the defendant was handcuffed at the time of the guilty plea proceedings).

N.Y.P.L. § 170.25, and bears no resemblance to the language of N.Y.V.T.L. § 403-a, which proscribes the falsification of "temporary indicia of [vehicle] registration." *See supra* notes 5, 6.[18] Furthermore, Petitioner was specifically advised by the Court, and acknowledged, that he was pleading guilty to a "class D felony," and not a "traffic infraction." *See* N.Y.V.T.L. § 403-a (violation of this provision is punishable as a "traffic infraction").

Because Petitioner's guilty plea was knowing and voluntarily, and because he was sentenced in accordance with the applicable statutory penalty, as well as his plea agreement, the 440 Court reasonably concluded that Petitioner's claim of unlawful sentencing was without merit. (*See* Dkt. 20-1 at ECF 93-95.) Accordingly, Petitioner's unlawful sentence claim is denied.

<u>CONCLUSION</u>

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED in its entirety. The Court declines to issue a Certificate of Appealability because Petitioner has not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Middleton v. Att'ys Gen. of States of N.Y., Pennsylvania,* 396 F.3d 207, 209 (2d Cir. 2005) (internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken

---

[18] Even if the issue were one of statutory interpretation with respect to the two provision, that is a state-law question that should be decided by the State court. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). A federal habeas court should not consider whether a state court's construction of state law is correct. *See Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 157 (2d Cir. 2009).

in good faith, and therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is directed to terminate the petition and to close this case.

**SO ORDERED**:

        /s/ Pamela K. Chen
        PAMELA K. CHEN
        United States District Judge

Dated: April 30, 2014
       Brooklyn, New York